**Keith DURR, Plaintiff–Appellant,**

**v.**

**INTERCOUNTY TITLE COMPANY OF ILLINOIS, an Illinois corporation, Defendant–Appellee.**

**Appeal of D. Alan HARRIS, Appellant.**

**Nos. 93–1570, 93–2433.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1993.

Decided Jan. 20, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 16, 1994.

D. Alan Harris (argued), Marcella Ruble, Daniel A. Kazlauski, Harris & Ruble, Chicago, IL, Jess E. Forrest, Harwood Heights, IL, for plaintiff-appellant.

Michael H. King (argued), James M. Amrein, Ross & Hardies, Chicago, IL, for Intercounty Title Co. of Illinois.

D. Alan Harris, pro se.

* Hon. Robert A. Grant, District Judge for the Northern District of Indiana, is sitting by designation.

Daniel A. Kazlauski, Harris & Ruble, Chicago, IL, for D. Alan Harris.

Before POSNER, Chief Judge, MANION, Circuit Judge, and GRANT, District Judge.*

MANION, Circuit Judge.

Attorney Alan Harris filed suit against Intercounty Title Company of Illinois, a title recording company, for overcharging Keith Durr $8.00 for the recording of a deed and mortgage. Durr purported to represent a class of consumers who also were allegedly overcharged, and who claimed damages three times the amount each class member paid Intercounty. The district court dismissed the complaint, and imposed Rule 11 sanctions for the attorney's unsubstantiated assertion that a class existed, and for the grossly inflated damage claim. 826 F.Supp. 259. The district court noted that the complaint, though cloaked "in the knightly mantle of consumer protection" was actually an attempt to turn a "petty dispute into a big-ticket lawsuit." Durr appeals the district court's dismissal of the lawsuit. Attorney Harris appeals the district court's imposition of sanctions. We affirm the dismissal and sanctions.

## I. Facts

On August 21, 1992, Keith Durr purchased a house in Indian Park, Illinois, using a federally related mortgage loan. He enlisted Intercounty Title Company to perform a number of services associated with the purchase. Among other services it provided, Intercounty filed the deed and mortgage with the Cook County Recorder of Deeds, which charged $23.00 to record the deed, and $31.50 to record the mortgage. When Intercounty billed Durr, it charged $25.00 and $37.00 respectively as reimbursement for the fees it paid to Cook County, with the proviso that "we have included a $1.50 service and handling fee in the charges for any instruments recorded." Therefore, Intercounty overcharged Durr, at most, approximately $8.00.[1] Intercounty also billed Durr for oth-

---

1. Even though the actual overcharge was, at most, really $7.50, we have rounded up to give Harris the benefit of any doubt, and to maintain

er services it provided, including $62.00 for recording fees, $155.00 for closing fees, and $170.00 for title insurance.

The attorney who represented Durr in the closing on the house discovered the discrepancy between the amount Cook County charged to record the deed and mortgage, and the amount Intercounty charged Durr to reimburse this cost. That attorney never contacted Intercounty about this discrepancy. Instead, he contacted attorney D. Alan Harris, who filed a class action lawsuit against Intercounty. In the initial complaint, Harris alleged that Intercounty violated the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2607(b), by overcharging real estate sellers and buyers in "transactions involving federally related mortgage loans." The complaint identified only one specific overcharge—Intercounty's charge to Durr of $25.00 and $37.00 instead of the actual $23.00 and $31.50 for Cook County's title and mortgage recording fees. Harris alleged, nevertheless, that Intercounty overcharged other real estate sellers and buyers; Harris filed the complaint as a class action on behalf of all of them. In his prayer for relief, Harris requested not only the $8.00 which Intercounty overcharged Durr, but also full recovery of the fees Intercounty regularly charged, including $62.00 for Durr's recording fees, $155.00 for his closing fees, and $170.00 for his title insurance. Harris then asked the court to treble the entire damage amount.

Intercounty responded to the complaint by writing a letter to the district court explaining that the $8.00 overcharge was due in part to oversight, and in part to copying costs and mailing costs. By its calculations, Intercounty actually overcharged Durr only $4.50. Intercounty also informed the court that Durr never as much as made a phone call to clear up the discrepancy. The district court *sua sponte* issued a memorandum order, which criticized the complaint's excessive damage claim, and apparent lack of factual support for the existence of other injured plaintiffs. The court expressed these concerns as follows:

At the outset some points ought to be made about Durr's own claim. Even if Durr's allegations are to be accepted (as this Court is bound to do in evaluating his complaint), Durr's damages for the violation would appear to be three times the $8.00 overcharge or $24.00, rather than three times what Intercounty charged for all its settlement services as prayed for in Durr's complaint (Durr was charged $62 for the recording fees referred to earlier, plus $155 for closing fees (which he does not challenge as a RESPA violation), and plus $170 for title insurance (also a non-challenged item)).

\* \* \* \* \* \*

So much then for Durr's own apparently overblown individual claim. As for any effort to springboard that individual claim into a class action (something that this Court is obligated to address early under Rule 23(c)(1)), there is nothing to suggest that the complained-of overcharge is part of a regular pattern of activity engaged in by Intercounty. Instead complaint ¶ 3 simply refers to "all other persons who have been improperly overcharged for settlement services by the defendant in connection with transactions involving a 'federally related mortgage loan.'" Durr's lawyers have proffered nothing to indicate that such a conclusory allegation—something that if sought to be introduced in the course of litigation would be subject to be stricken as "assuming facts not in evidence"—is the product of the prefiling inquiry that counsel are mandated to undertake by Rule 11.

The court ordered Harris to respond to these issues within ten days.

Although warned of the frivolity of his damage request, and the apparent lack of foundation supporting the existence of his professed class, Harris persisted in his attack. Within the ten-day deadline imposed by the court, Harris filed a nine-page memorandum attempting to elucidate his legal theories. He also filed an amended complaint which boldly reasserted the errors of the first complaint; Harris maintained the iden-

consistency with the district court's decisions,

which always referred to an $8.00 overcharge.

tical damage request, and sought recovery for the same phantom class of injured plaintiffs. The court then *sua sponte* issued a second memorandum, again identifying the defects in the pleading. Harris also ignored this warning.

Having fired two warning shots, the district court proceeded to consider the complaint as it would any other, under the strictures of the applicable law and the Federal Rules of Civil Procedure. Intercounty filed a motion to dismiss the amended complaint, and a motion to strike the prayer for relief. The court responded by dismissing the complaint, concluding that even if its allegations were accepted as true, the complaint did not state a claim under RESPA. This ruling, of course, had the effect of striking the prayer for relief. But the court chose to consider Intercounty's motion to strike the prayer for relief in the context of Rule 11, Fed.R.Civ.P. The court reiterated its criticism of the excessive damage claim, and the lack of foundation for the existence of the class of injured plaintiffs. The court initiated the Rule 11 proceedings as follows:

> There is no question but that the dollar signs here were in Harris' eyes, and they obviously blinded him to the plain meaning of the law. Accordingly the complaint's prayer for relief must be stricken. And Harris' greed and obduracy must have their price. Unless Harris can offer up some better showing of the objective good faith that is demanded by Fed.R.Civ.P. ("Rule") 11 than he has done up to now, he will be subject to an "appropriate sanction" as mandated by that rule.

The parties filed memoranda regarding Rule 11. Intercounty created a side issue in the Rule 11 proceedings by stating in its memorandum that "Mr. Harris has made somewhat of a career of being a legal gadfly, and shows a marked propensity for persisting with meritless claims." Intercounty proceeded to recount an instance where another court sanctioned Harris for pursuing a meritless claim. Harris responded immediately to these accusations by filing a motion to strike Intercounty's statements because they were inaccurate. The court then held a hearing to resolve the Rule 11 question. The court granted Harris' motion to strike, finding Intercounty's accusations about Harris' reputation to be inappropriate. The court then proceeded to impose $8,000 in Rule 11 sanctions against Harris, plus taxable costs. Durr appeals the dismissal of his RESPA claim, and Harris appeals the imposition of Rule 11 sanctions.

## II. Analysis

### A. Motion to Dismiss

■ The theory of recovery which Harris presents in the complaint begins with the Real Estate Settlement Procedures Act— RESPA. To understand Harris' theory, and its ultimate impropriety, it is necessary to first discuss that statute. At its core, "RESPA is an anti-kickback statute." *Mercado v. Calumet Fed. Sav. & Loan Ass'n,* 763 F.2d 269, 270–71 (7th Cir.1985). Its purpose is to "prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished for the referral of real estate settlement business." *Id.* (quoting Senate Report). In line with this broad purpose, the specific RESPA section which Harris relied upon in framing the complaint, 12 U.S.C. § 2607(b), provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." RESPA goes on to provide treble damages for parties injured by violations of the statute. 12 U.S.C. § 2607(d)(2).

When Harris became aware that Intercounty had overcharged Durr for mortgage and deed recording services, he apparently concluded that this action violated the statute. He also supposed—without conducting any factual inquiry—that Intercounty's overcharge to Durr was not an isolated incident; he surmised that if Intercounty overcharged Durr, it must have overcharged others. Harris proceeded to draft and file a class action complaint, on behalf of all those unknown plaintiffs injured by Intercounty's overcharging. Durr was named as the representative of the class.

Ultimately the district court dismissed the complaint, concluding that it did not state a claim under RESPA. Durr appeals that ruling. Although this appeal primarily challenges sanctions, we first need to examine the propriety of the district court's dismissal of the complaint. We review the district court's decision to dismiss *de novo. Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). In conducting our review, we accept all material allegations made in the complaint as true, and draw all reasonable inferences from these allegations in the plaintiff's favor. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992). We will affirm the court's dismissal if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The principal fact alleged in the complaint is that Intercounty overcharged Durr, in the amount of $8.00, for mortgage and deed recording services. Harris based his entire RESPA class action on this lone overcharge. The district court determined that this single fact was not enough to state a claim under RESPA, and we agree. Our decision in *Mercado* supports the district court's dismissal in this case. In *Mercado,* the plaintiff alleged that a bank violated RESPA by wrongly declaring a mortgage to be in default, and then demanding immediate payment or refinancing at terms favorable to the bank. The plaintiff claimed that the favorable refinancing would provide the bank an undeserved windfall, which essentially amounted to the type of overcharging in a real estate transaction which RESPA was intended to prohibit. We conceded that "RESPA is a broad statute, directed against many things that increase the cost of real estate transactions." *Mercado,* 763 F.2d at 271. But we concluded that, under RESPA's express terms, this broad protection extends only over transactions where the defendant gave or received "any portion, split, or percentage of any charge" to a third party. *Id.* at 270. We held that because the complaint did not allege any such kickback to a third person, the plaintiff failed to state a claim under RESPA.

In this case, as in *Mercado,* the plaintiff failed to allege that Intercounty's overcharge was in the nature of a "portion, split, or percentage of any charge" given to a third party. If anything, Intercounty's overcharge was simply a windfall it kept for itself. As we stated in *Mercado,* RESPA "requires at least two parties to share fees." *Id.* at 270. Therefore, the district court correctly dismissed this case because there was no allegation that Intercounty shared the $8.00 with anyone.

### B. Sanctions

■ We next turn to the district court's decision to impose Rule 11 sanctions. Rule 11 requires all parties who file a complaint in federal court, to make sure "that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the complaint] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." The rule allows a district court to impose an "appropriate sanction" when a party files a complaint in derogation of this responsibility. We review a court's decision to impose Rule 11 sanctions under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Harrington v. DeVito,* 656 F.2d 264, 269 (7th Cir.1981).

Harris maintains that the district court abused its discretion in imposing sanctions because the complaint was well-grounded in a fact—the $8.00 overcharge—and was a good faith attempt to state a claim under RESPA. But Harris misconstrues the district court's decision. The district court never determined that Harris' basic theory of recovery was so far outside of the purview of RESPA that he should be sanctioned. Such a ruling might have been improper; RESPA could reasonably be seen as having far-reaching scope. *See United States v. Gannon,* 684 F.2d 433, 438 (7th Cir.1981) (*en banc*) ("Con-

gress' aim [in enacting RESPA] was to stop *all* abusive practices that unreasonably inflate federally related settlement costs to the public."); *see also Mercado,* 763 F.2d at 271 ("RESPA is a broad statute"). The district court, rather, determined that even under Harris' extremely broad reading of RESPA, he made an unsupported damage claim on behalf of a class of plaintiffs that did not exist. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1335 at 92 (1990) ("Rule 11 may be applied to a single aspect of a document so that the sufficiency of some portions of a signed paper will not immunize it in its entirety."); *Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1067 (7th Cir.1987). The district court concluded that these actions supported the imposition of sanctions under Rule 11. Our review is confined, simply, to whether the district court abused its discretion in reaching this conclusion.

First, regarding the excessive damage claim, even though Harris identified only an $8.00 overcharge, he nevertheless sued to recover all the charges Intercounty made to Durr: $62.00 for recording fees, $155.00 for closing fees, and $170.00 for title insurance. There was never an allegation that these fees were illegitimate. In fact, the documents attached to the complaint indicate that Intercounty actually provided these services. Harris does not dispute that these services were provided. The question, then, is why did Harris include these legitimate charges in his damage request? That is the question the district court asked in its *sua sponte* memorandum issued right after Harris filed his complaint. Harris had no answer, nor did he heed the obvious warning that was written between the lines of that memorandum—that he had made a frivolous damage claim. Instead, Harris proceeded to amend his complaint, asserting the same unsupported damage theory. *See Flip Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1036 (7th Cir.1988) (Rule 11 sanctions are appropriate where a party continues to pursue a claim after its frivolousness becomes clear). We will not say that the district court abused its discretion by imposing Rule 11 sanctions for Harris' excessive damage claim. One can wonder why Harris would literally "make a federal case" out of a paltry claim of $8.00. But at least there was some foundation for claiming that amount. To the extent the claim exceeded three times the $8.00, however, there was no basis for it. As we stated in *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986), "[i]t is not acceptable to make an assertion of law and hope that it will turn out to be true."

Next, we turn to the district court's decision to impose sanctions because Harris sued on behalf of a class of plaintiffs that did not exist. Harris took the simple $8.00 overcharge and assumed that Intercounty had made similar overcharges in the past. Therefore, the complaint sought recovery on behalf of "all other persons who have been improperly overcharged for settlement services by the defendant...." But Harris never identified any such injured persons. The district court reasonably concluded that Harris never made the appropriate inquiry—which is required by Rule 11—to determine whether Intercounty's overcharge to Durr was an isolated incident. *See Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583, 596 (7th Cir.1989) (Rule 11 sanctions are appropriate where the undisputed evidence shows that an attorney filed a complaint without conducting the appropriate factual inquiry). Instead, in keeping with his attempt to turn a "petty dispute into a big ticket lawsuit," Harris imagined that the overcharge was not an isolated incident; that it was part of a larger scheme to bilk customers. The district court did not abuse its discretion by imposing sanctions for Harris' assertion that a class existed, when none really did. *Cf. Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205 (7th Cir.1985) (upholding Rule 11 sanctions where the plaintiff alleged that he was a member of victimized class under 42 U.S.C. § 1985(3), based on the sole fact that his car had been towed).

## C. Other Arguments

Harris raises some other arguments that require little comment. First, Harris continues to take offense at Intercounty's Rule 11 memorandum, which made negative personal comments about him, at one point

calling him "a legal gadfly." Harris contends that, not only should we reverse the Rule 11 sanctions against him, but that we should impose sanctions against Intercounty for making these accusations. We note that he never moved for sanctions at the district court. Nevertheless, the district court did not err in failing to award sanctions. The district court acted reasonably in striking the statements because they were unnecessary to the Rule 11 inquiry. Once stricken, the offending statements could offend no more. The only reason we recount the statements is because Harris has brought them up.

Next, Harris challenges the district court's purported imposition of sanctions under 28 U.S.C. § 1927. Harris claims that the court failed to provide adequate notice before imposing such sanctions. But, after careful review of the record, we are unable to see where the court awarded sanctions under 28 U.S.C. § 1927; the court made a passing reference to the statute at one point during a Rule 11 hearing, and that was it. The court made clear that it was imposing sanctions under Rule 11. Therefore, we make no further inquiry into Harris' contentions regarding 28 U.S.C. § 1927.

We note, as a final matter, that Harris does not challenge the amount or scope of the sanctions, thus eliminating any reason for us to evaluate them.

### III. Conclusion

Harris made a federal case out of an $8.00 overcharge for title and mortgage recording services, alleging violations of RESPA. The district court properly dismissed the complaint. The district court also did not abuse its discretion in imposing Rule 11 sanctions against Harris for his excessive damage claim, and for his unsupported allegation that there was a class of injured plaintiffs deserving of recovery. For the reasons expressed in this opinion, we

AFFIRM.