**Rosa HIGGINS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94CV00339.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

July 14, 1995.

David Coventry Smith, Linda L. Helms, Winston–Salem, NC, for plaintiff.

U.S. Attorney, Greensboro, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiff Rosa Higgins filed this action on June 24, 1994, alleging that Defendant United States is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*, for personal injuries sustained by Higgins at a United States Post Office in Winston–Salem, North Carolina. This case comes before the Court on the United States' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. For the reasons which follow, the motion to dismiss shall be GRANTED.

### I.

The facts, stated most favorably to Ms. Higgins, the non-moving party, are as follows: Ms. Higgins is a lifelong resident of Winston–Salem, North Carolina. On February 4, 1993, at approximately eleven a.m., Ms. Higgins visited the central office for the United States Postal Service ("USPS") for Winston–Salem, North Carolina. The office is located at 1500 Patterson Avenue and is primarily used as a distribution center ("Center"). There is, however, a lobby which has post office boxes, a parcel pickup service and stamp machines available to walk-in customers during the week. In addition, there is a customer service window located in the middle alcove of the Center which remains unattended unless a patron rings for service. Postal employees generally do not have a view of the lobby area, and there are no security guards or cameras.

Ms. Higgins purchased stamps and stayed at the Center to affix the stamps and address letters. During this activity, a man rushed from the corner of the lobby and grabbed Ms. Higgins' purse. When she tried to defend herself, the man threw her to the ground. Her fall resulted in a broken hip.

Prior to and after this incident, the Winston–Salem postmaster, Mark Matics, was aware that the postal center is located in a "very high risk" area. In a letter to an Inspector-in-Charge of the USPS, Mr. Matics stated that the Postal Inspection Service and the Winston–Salem Police Department had determined the Center was in a high-

crime area. Specifically, the letter acknowledged neighborhood drinking, drug-dealing and dangerous weapons. Mr. Matics was concerned about the safety of distribution center employees, criminal incidents at the center and existing security at the center.

## II.

■ There are two ways to present a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). First, a party may argue that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Id.* In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. *Id.* Second, a party may assert that the jurisdictional allegations of the complaint are not true. Then, a trial court may look beyond the allegations of the complaint to evidence and determine if there are facts to support the jurisdictional allegations. *Id.*

Here, the United States' motion falls into the former category. The United States contends that the facts do not provide this Court subject matter jurisdiction under the FTCA due to the "discretionary function" exception to the Act, 28 U.S.C. § 2680(a). The parties do not dispute any material facts regarding the events which culminated in this litigation. Therefore, the motion to dismiss for lack of subject matter jurisdiction shall be viewed as would a 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted.

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a court should accept as true all well-pleaded allegations, and viewing the complaint in a light most favorable to the plaintiff, should not dismiss the case unless it appears certain that the plaintiff can prove no set of facts which would entitle him to relief. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

## III.

■ The FTCA waives the sovereign immunity of the United States in order that the government be liable in tort "in the same manner and to the same extent as a private individual under like circumstances ..." *Baum v. United States*, 986 F.2d 716 (4th Cir.1993) (quoting 28 U.S.C. § 2674) In an effort to protect the government from judicial "second guessing" of legislative and administrative decisions and liability that would hinder operations, Congress created the discretionary function exception to the FTCA. *United States v. Varig*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984) (quoting *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963)). The Supreme Court has repeatedly emphasized that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig*, 467 U.S. at 808, 104 S.Ct. at 2762.

To assist in judicial analysis, the United States Supreme Court has provided a two-step approach to determine if a function is discretionary. *Baum*, 986 F.2d at 720; *see generally United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The first consideration is whether a particular government action "involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958; *Gaubert*, 499 U.S. at 326, 111 S.Ct. at 1275. "The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation or policy prescribing a specific course of action." *Baum*, 986 F.2d at 720 (emphasis added).

There is no "specific" regulation of security at postal facilities across the country. The postmaster of each locale is the "Security Control Officer" responsible for the "general security of the post office ... in accordance with rules and regulations issued by the Chief Postal Inspector." 39 C.F.R. § 231.2. The general instruction of the regulation leaves many security decisions to the judg-

ment and choice of the Chief Postal Inspector and individual postmasters.

Because no mandatory statute, regulation, or policy applies, this Court must move to the second step of the *Berkovitz–Gaubert* analysis and asks whether the choice or judgment involved is one "based on considerations of public policy." *Baum,* 986 F.2d at 720 (quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273–74; *Berkovitz,* 486 U.S. at 531, 108 S.Ct. at 1954). The Court is "to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of public policy." *Baum,* 986 F.2d at 720. As to this analysis, *Gaubert* noted:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert,* 499 U.S. at 324–325, 111 S.Ct. at 1274–75.

The relevant decision made here was whether to provide security at the Patterson Avenue branch of the post office. The omission of particularity in instruction strongly suggests that Congress intended to provide the Chief Postal Inspector and individual postmasters considerable latitude concerning security measures. This latitude compels policy analysis. Like most governmental departments and agencies, there are limited resources available to the USPS. The Chief Postal Inspector and postmasters must focus upon economic, social and political concerns to determine the manner in which resources shall be allocated. Ultimately, they reach a conclusion based on those policy factors.

This Court will not assume "that government agents, in undertaking actions of the type normally thought to involve policy choices, in a particular case acted arbitrarily or on a whim, disregarding [ ] essential policy questions." *Baum,* 986 F.2d at 721. Instead, this Court must assume that public officials have "properly discharged their official duties." *Id.* It is "largely irrelevant the presence or absence of evidence that involved government agents . . . did or did not engage in a deliberative process before exercising their judgment." *Id.* Hence, it is determined that the USPS agents made an affirmative decision based on policy, reason and sound judgment.

The Fourth Circuit has continually held that the burden of proving subject matter jurisdiction is on the plaintiff. *Adams v. Bain,* 697 F.2d 1213 (4th Cir.1982). Because Plaintiff has pleaded no set of facts which would take this action outside of the discretionary function exception, this Court cannot assume jurisdiction under the Federal Tort Claims Act. Therefore, the Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

### JUDGMENT

For the reasons stated in the memorandum opinion filed contemporaneously herewith, IT IS ORDERED that Defendant's motion to dismiss Plaintiff's claim for lack of subject matter jurisdiction is GRANTED, and this action is DISMISSED. The motion to be exempted from mediation is necessarily moot.