Richard C. **MULLINAX, Jr.,** Perry Pike, Joseph Adams, and Verda Adams, on behalf of themselves and all other persons persons similarly situated, Plaintiffs,

v.

**RADIAN GUARANTY INC. and Amerin Guaranty Corporation, Defendants.**

**No. 1:00 CV 01247.**

United States District Court, M.D. North Carolina.

March 30, 2004.

Martha Melinda Lawrence, Patterson Harkavy & Lawrence, Raleigh, NC, Michael D. Calhoun, Gulley Eakes and Volland, Durham, NC, Melvyn I. Weiss, Michael C. Spencer, Anita B. Kartalopoulos, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, Larry I. Smith, Thompson & Smith, P.C., Thomas W. Tucker, John B. Long, Tucker Everitt Long Brewton & Lanier, Augusta, GA, for Plaintiffs.

Mack Sperling, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, David Smith, Wendy Beetlestone, Schnader Harrison Segal & Lewis, LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendants Radian Guaranty Incorporated

and Amerin Guaranty Corporation's (collectively "Radian" or "Defendants") Motion to Dismiss [Document # 27] Plaintiffs' Amended Complaint (hereinafter "Second Motion to Dismiss"). Plaintiffs Richard C. Mullinax, Jr., Perry Pike, and Joseph and Verda Adams (collectively "Plaintiffs"[1]) have alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617. (Am. Compl. [Doc. # 26] ¶¶ 1–2.) In particular, Plaintiffs claim relief under § 2607 of that Act. In its January 25, 2002, Opinion [Document # 23], this Court held that, unless Plaintiffs Mullinax and Pike could adequately allege the doctrine of fraudulent concealment so as to equitably toll RESPA's one-year statute of limitations, their cause of action would be time barred. *Mullinax v. Radian Guar. Inc.*, 199 F.Supp.2d 311, 335–36 (M.D.N.C.2002). While Mullinax and Pike in their original Complaint [Document # 1] alleged that the doctrine of fraudulent concealment tolled the statute of limitations so as to make their claims timely, the Court ruled that Mullinax and Pike had not alleged, with the particularity required by Federal Rule of Civil Procedure 9(b), that Defendants had fraudulently concealed the alleged kickback scheme. *Mullinax*, 199 F.Supp.2d at 326–32, 335. Although, this flaw warranted dismissal of Plaintiffs' Complaint, the Court granted Plaintiffs Mullinax and Pike a thirty-day extension for the sole purpose of allowing Mullinax and Pike to amend their Complaint to sufficiently state allegations of fraudulent concealment. *Id.* at 336.

Subsequently, Mullinax and Pike submitted their Amended Complaint. Without leave of court, however, Mullinax and Pike have attempted to add two new parties, Joseph and Verda Adams, to their lawsuit. (*See* Am. Compl.) Defendants then filed their Second Motion to Dismiss, raising three primary bases for dismissal of Plaintiffs' claims: (1) Plaintiffs Mullinax and Pike were required to seek leave of court to add Joseph and Verda Adams as additional parties to this cause of action; (2) regardless of the Adamses status as parties to this cause of action, no Plaintiffs have standing to bring these claims under RESPA; and (3) even if any Plaintiffs do have standing, Mullinax and Pike have failed to comply with the Court's Order [Document # 24] requiring them to allege fraudulent concealment with particularity.

I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case were discussed in detail in this Court's previous opinion, *Mullinax v. Radian Guaranty Inc.*, 199 F.Supp.2d 311 (M.D.N.C.2002). Accordingly, the Court will restate only the facts that are relevant to deciding Defendants' Second Motion to Dismiss, which is currently before this Court. Because this matter is before the Court on a motion to dismiss, the Court views the allegations in the light most favorable to Plaintiffs, and thus accepts as true all well-pleaded allegations. On or about June 2, 1999, Plaintiffs Mullinax and Pike obtained a home mortgage through Crestar Mortgage Corporation ("Crestar"). Under the terms of this mortgage, Crestar required that Mullinax and Pike purchase primary mortgage insurance and referred them to Defendants, providers of primary mortgage insurance. Mullinax and Pike then contracted with Defendants to purchase the needed primary mortgage insurance. On or about August 17, 2001, plaintiffs Joseph and Verda Adams obtained a home mortgage through Branch Banking and Trust Company ("BB & T"). Under the terms

---

**1.** Although the question of whether the Adamses are properly before this Court is first addressed in Section II, the Court will use the term "Plaintiffs" to refer collectively to Mullinax, Pike, and the Adamses.

of this mortgage, BB & T required the Adamses to purchase primary mortgage insurance and referred them to Defendants, providers of primary mortgage insurance. The Adamses then contracted with Defendants to purchase the primary mortgage insurance they needed.

On December 15, 2000, Mullinax and Pike filed a Complaint alleging that Defendants violated RESPA by providing kickbacks to and splitting fees with lenders. Specifically, Mullinax and Pike contended (and all Plaintiffs, including the Adamses, now contend) that Defendants "systematically violated the anti-kickback and anti-fee-splitting provisions" of RESPA. (Compl.¶ 1.) Defendants allegedly provided these incentives to lenders through various mechanisms that Plaintiffs refer to as "kickback schemes."[2] Plaintiffs thus contend that they have been subjected to violations of RESPA because Radian obtained their business by providing illegal kickbacks to Crestar and BB & T. Notably, Plaintiffs do not contend (nor did they allege) that Radian overcharged them for mortgage insurance, only that Radian illegally provided kickbacks to Crestar and BB & T for referring Plaintiffs' business to Radian.

In the December 15, 2000, Complaint, Plaintiffs Mullinax and Pike requested various remedies, including damages and declaratory and injunctive relief. On February 15, 2001, Defendants filed their Motion to Dismiss [Document # 9] (hereinafter "First Motion to Dismiss") for failure to state a claim, arguing that Mullinax and Pike's claims were barred by the relevant

statute of limitations and by the McCarran–Ferguson Act. Defendants further contended that even if Plaintiffs Mullinax and Pike's claims were not barred for those reasons, RESPA did not allow them to seek injunctive relief. On January 25, 2002, the Court granted Defendants' First Motion to Dismiss with respect to Mullinax and Pike's request for injunctive relief, holding that private litigants are not entitled to injunctive relief under RESPA. The Court further held that the McCarran–Ferguson Act did not bar Mullinax and Pike's claims and that Mullinax and Pike had sufficiently stated claims for relief under RESPA.[3] However, the Court held that unless Mullinax and Pike could sufficiently allege that the doctrine of fraudulent concealment applied so as to equitably toll RESPA's one-year statute of limitations, their claims would be barred as untimely. The Court noted that to equitably toll the statute of limitations, Mullinax and Pike must show both that Radian fraudulently concealed its wrongdoing from Mullinax and Pike and that Mullinax and Pike exercised due diligence to discover any RESPA claims that they might have. While the Court found that Mullinax and Pike had adequately pled due diligence under the notice pleading standards of Federal Rule of Civil Procedure 8, the Court found that they had failed to properly plead fraudulent concealment under the heightened pleading standards of Rule 9(b). Therefore, although the Court noted that the Complaint was properly subject to dismissal for failure to state a claim,[4] the Court in its discretion declined

---

**2.** According to Plaintiffs, these alleged kickback schemes included: (1) supplemental pool insurance, (2) captive reinsurance agreements, (3) contract underwriting, and (4) performance notes and other transactions.

**3.** The Court notes that, with the exception of the Court's discussion in its January 25, 2002, Opinion with respect to whether RESPA's statute of limitations barred Mullinax and

Pike's RESPA claims, the Court's January 25, 2002, Opinion would also apply to the Adamses to the extent that the Court determines they were properly added as parties.

**4.** The Fourth Circuit Court of Appeals has held that "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harri-*

to dismiss the Complaint but instead granted Mullinax and Pike a thirty-day extension to amend their Complaint in order to sufficiently state allegations of fraudulent concealment. Defendants were then permitted to renew their Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6).

On February 25, 2002, Plaintiffs filed their Amended Complaint. Defendants then renewed their Motion to Dismiss on March 11, 2002. The Court held a hearing on this matter on January 29, 2004. The relevant issues having been thoroughly briefed and argued by the parties, this matter is ripe for adjudication. The Court will first consider Defendants' arguments that the Adamses are not properly before this Court because Mullinax and Pike were required to seek leave of court to add the Adamses as parties. The Court will then consider Defendants' arguments that no Plaintiffs have Article III standing to pursue their RESPA claims against Defendants. Finally, this Court will consider Defendants' arguments that Mullinax and Pike have still failed to adequately plead fraudulent concealment so as to invoke the doctrine of equitable tolling and therefore Mullinax and Pike's claims are barred by the statute of limitations

## II. WHETHER PLAINTIFFS MULLINAX AND PIKE COULD AMEND THEIR COMPLAINT TO ADD JOSEPH AND VERDA ADAMS AS PLAINTIFFS

As an initial matter, the Court must determine whether Plaintiffs Mullinax and Pike properly added Joseph and Verda Adams as Plaintiffs to this lawsuit. Defendants contend that Mullinax and Pike failed to seek leave to amend their Complaint to add the Adamses as Plaintiffs and

therefore the Adamses should be dismissed from this suit. The Court notes that Plaintiffs did not file a motion for leave to amend to add parties to this suit. Further, the Court's January 25, 2002, Order clearly did not grant Plaintiffs such leave. In its Order, the Court stated "that Plaintiffs Richard C. Mullinax, Jr. and Perry Pike are GRANTED an extension of thirty (30) days from the date of this ORDER within which to amend their Complaint with respect to their allegations of equitable tolling on the basis of fraudulent concealment." *Mullinax*, 199 F.Supp.2d at 336. The Court did not contemplate that, based on its Order, in which it could have dismissed Mullinax and Pike's Complaint outright, that Mullinax and Pike would respond to the Court's mandate by adding parties, especially parties who, as is apparent from the Amended Complaint, did not even have claims at the time that Mullinax and Pike filed their original Complaint. Therefore, the Court agrees with Defendants to the extent that the scope of the Court's original Order did not grant Plaintiffs Mullinax and Pike leave to amend their Complaint so as to add additional parties to this lawsuit.

The Court is forced to agree with Plaintiffs, however, that neither did the Court's January 25, 2002, Order foreclose whatever rights of amendment that Plaintiffs may have had. Plaintiffs contend that pursuant to Federal Rule of Civil Procedure 15(a) Mullinax and Pike had the right to amend their Complaint once as a matter of course and that the Court's January 25, 2002, Order did not extinguish this right. Defendants, however, oppose amendment as of right on two grounds: (1) Plaintiffs may only amend as of right within "twenty days from the time of the original plead-

son v. *Westinghouse Savannah River Co.,* 176 F.3d 776, 783 n. 5 (4th Cir.1999) (citing *United States ex rel. Thompson v. Columbia/HCA*

*Healthcare Corp.,* 125 F.3d 899, 901 (5th Cir. 1997)).

ing" (Defs.' Mem. Law Supp. Mot. Dismiss Am. Compl. [Doc. # 28] (hereinafter "2d Mem. Law") at 13.); (2) Plaintiffs may not amend as of right because the Court granted Defendants' Motion to Dismiss. (Defs.' Reply Br. Supp. [2d] Mot. Dismiss [Doc. # 40] (hereinafter "2d Reply Br.") at 9–10.) Federal Rule of Civil Procedure 15(a) states:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

To the extent that Defendants argue that Plaintiffs' Amendment is not permitted because it was filed more than twenty days after Mullinax and Pike filed their original Complaint, Defendants' argument is in error. The twenty-day rule applies only "if the pleading is one to which no responsive pleading is permitted." In this case, a responsive pleading (i.e., an answer) was permitted, but Defendants instead elected to file a motion to dismiss. The Fourth Circuit Court of Appeals has consistently held that a motion to dismiss is not a responsive pleading and therefore does not cut off a plaintiff's right to amend his complaint once as a matter of course. *See, e.g., Domino Sugar Corp. v. Sugar Workers Local Union 392,* 10 F.3d 1064, 1068 n.

1 (4th Cir.1993); *Smith v. Blackledge,* 451 F.2d 1201, 1203 n. 2 (4th Cir.1971).

Defendants contend, however, that in this case not only did they file their First Motion to Dismiss, but the Court has granted that Motion. Therefore, according to Defendants, Plaintiffs' right to amend without leave of court was cut off by this Court's January 25, 2002, Order. In the hearing this Court held on January 29, 2004 (hereinafter "Motion Hearing"), Plaintiffs contended, however, that the Court "specifically declin[ed] to dismiss the complaint...." (Mot. Hr'g Tr. at 37.) The Court agrees with Defendants' argument to the extent that if the Court had granted Defendants' original Motion to Dismiss, the Court's January 25, 2002, Order would have extinguished Plaintiffs' right to amend as a matter of course. *See Sachs v. Snider,* 631 F.2d 350, 351 (4th Cir.1980) (per curiam). Ultimately, however, the Court agrees with Plaintiffs to the extent that the Court finds that its January 25, 2002, Order technically did not dismiss the original Complaint. In that Order, the Court held that "[i]f Plaintiffs [Mullinax and Pike] fail to amend their Complaint within [the thirty-day] time period, Defendants' Motion to Dismiss for Failure to State a Claim shall be GRANTED and Plaintiffs' Complaint shall be dismissed with prejudice." *Mullinax,* 199 F.Supp.2d at 336. Thus, while the Court indicated that it would dismiss the original Complaint if Mullinax and Pike did not amend the Complaint in accordance with the Court's directions, the Court specifically did not dismiss the Complaint, nor did the Court otherwise modify any of the pretrial schedules that were in place.

For the foregoing reasons, therefore, the Court denies Defendants' Second Motion to Dismiss with respect to Defendants' contentions that Mullinax and Pike were not permitted under Federal Rule of Civil

Procedure 15(a) to add the Adamses as parties to this case. In making this ruling, the Court specifically notes, however, that the outcome would have been much different if the Court had, instead of granting Mullinax and Pike an extension to amend their Complaint prior to the Court ruling on Defendants' Motion to Dismiss, granted Defendants' Motion to Dismiss with leave for Mullinax and Pike to amend to address fraudulent concealment. Under those circumstances, Mullinax and Pike would have been required under Rule 15(a) to seek leave of this Court to add additional parties. The Court, however, in its discretion, elected not to dismiss Mullinax and Pike's Complaint with leave to amend, and for that reason Plaintiffs are allowed to amend as a matter of course pursuant to Rule 15(a).

### III. MOTION TO DISMISS ALL PLAINTIFFS FOR LACK OF STANDING

In a footnote to their Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint [Document # 28] (hereinafter "Second Memorandum of Law"), Defendants contend for the first time that if Plaintiffs are not challenging the rates they paid for insurance, then they have not been injured by Radian's alleged kickback scheme and therefore do not have standing to bring their claims against Radian. While the standard procedure to challenge a plaintiff's standing is through a Rule 12(b)(1) motion, because standing is a matter of subject matter jurisdiction, a party or the Court may raise the issue any time it appears that the Court lacks subject matter jurisdiction over the plaintiff's claims. Because a plaintiff must have standing in order for the Court to have subject matter jurisdiction over a plaintiff's claims, resolution of the question of standing necessarily takes precedence over the question of whether plaintiffs have stated a claim upon which relief can be granted, that is, without jurisdiction, the court has no power to rule on the validity of a claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 1012–13, 140 L.Ed.2d 210 (1998). Although Defendants have not filed a formal Rule 12(b)(1) Motion, Defendants have still challenged the Court's subject matter jurisdiction over Plaintiffs' claims by contending that the Amended Complaint fails to allege facts upon which subject matter jurisdiction can be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Therefore, Plaintiffs enjoy procedural safeguards similar to those they would enjoy when opposing a Rule 12(b)(6) motion. *See id.* As such, the Court will accept Plaintiffs' allegations as true, construing them most favorably to Plaintiffs, and will rely solely on the pleadings, disregarding affidavits or other materials. *Id.; Higgins v. United States*, 894 F.Supp. 232, 234 (M.D.N.C. 1995), *aff'd per curiam*, 81 F.3d 149 (4th Cir.1996). Therefore, Defendants will prevail on the issue of standing only if the allegations in Plaintiffs' Amended Complaint are insufficient as a matter of law to support standing. *See Adams*, 697 F.2d at 1219.

The Court first notes that to satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), Plaintiffs must establish three elements: (1) injury in fact, (2) traceability, and (3) redressability. *See id.* at 560–61, 112 S.Ct. at 2136; *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir.2000). Plaintiffs satisfy the injury-in-fact requirement if they have suffered an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent. *See Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136; *Friends of the*

*Earth, Inc.*, 204 F.3d at 154. Traceability refers to causation. Plaintiffs must demonstrate that the injury they have suffered was caused by the challenged conduct of Defendants, and not by the independent action of some third party. *See Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136; *Friends of the Earth, Inc.,* 204 F.3d at 154. Finally, redressability assures the effectiveness of judicial involvement. Plaintiffs must show that it is likely, and not merely speculative, that a favorable decision will remedy the injury. *See Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136; *Friends of the Earth, Inc.,* 204 F.3d at 154. Although each of the three elements "should be examined distinctly, their proof often overlaps." *Friends of the Earth, Inc.,* 204 F.3d at 154. Moreover, all three share the common purpose of ensuring that the judiciary, and not another branch of government, is the appropriate forum in which to address the complaint. *Id.* (citing *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)).

The elements of standing that are in question in this case are injury in fact and redressability. The crux of Defendants' argument is that Plaintiffs have failed to plead an injury in fact and therefore Plaintiffs do not have standing, that is, Plaintiffs have not alleged that they were overcharged for primary mortgage insurance and therefore they were not injured. Plaintiffs concede that they have not alleged that Radian overcharged Plaintiffs for primary mortgage insurance. Plaintiffs instead maintain that although they have not claimed any monetary injury, they have been injured because "they participated in a settlement process where illegal kickbacks were paid and that the violation of the statutory prohibition against kickbacks gives them standing . . . ." (Mot. Hr'g Tr. at 49.) The crux of Plaintiffs' argument, therefore, is that RESPA "establishes that borrowers are entitled to receive kickback-free settle-

ment services." (Pls.' 2d Opp. Br. at 14.) Defendants contend that such allegations are insufficient to show an injury in fact. In Defendants' Reply Brief in Support of Its [sic] Motion to Dismiss [Document # 40] (hereinafter "Second Reply Brief"), Defendants argue that RESPA does not confer "an absolute right for the borrower to receive 'kickback-free settlement services.'" (Defs.' 2d Reply Br. at 4.) Instead, Defendants contend that RESPA's legislative history and its stated purpose demonstrate that RESPA is only designed to protect consumers from kickbacks that " 'tend to increase unnecessarily the costs of certain settlement services.'" (*Id.* (emphasis omitted) (quoting 12 U.S.C. § 2601(a)).) Defendants rely primarily on *Moore v. Radian Group, Inc.,* 233 F.Supp.2d 819 (E.D.Tex.2002), *aff'd without opinion,* 69 Fed.Appx. 659, 2003 WL 21356062 (5th Cir.2003), in which the district court dismissed the plaintiffs' RESPA claims for lack of standing. The issue in *Moore* is precisely the issue before the Court in this case: "whether Congress intended to allow a private plaintiff to sue for an alleged violation of RESPA's anti-kickback provision when the plaintiff has not alleged that the referral arrangement increased any of the settlement charges at issue or that any portion of the charge for the settlement service was involved in the kickback violation." *Id.* at 824. The court in *Moore,* relying on *Durr v. Intercounty Title Co. of Illinois,* 14 F.3d 1183 (7th Cir.1994), and *Morales v. Attorneys' Title Insurance Fund, Inc.,* 983 F.Supp. 1418 (S.D.Fla.1997), held that because the plaintiffs did not claim that they were overcharged for primary mortgage insurance, they did not have standing under RESPA.

An analysis of whether the rationale of *Moore* applies to this case requires the Court to examine the relevant provisions of RESPA and the cases relied upon by

the district court in *Moore*. RESPA states, in pertinent part, the following:

12 U.S.C. § 2601. Congressional findings and purpose

(a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country....

(b) It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result ... (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

12 U.S.C. § 2607. Prohibition against kickbacks and unearned fees

(a) Business referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

.    .    .    .    .

(d) Penalties for violations; joint and several liability; treble damages; actions for injunction by Secretary and by State officials; costs and attorney fees; construction of State laws

.    .    .    .    .

(2) Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

As discussed more fully in the Court's January 25, 2002, Opinion, Plaintiffs' cause of action is based on § 2607(a), and Plaintiffs are seeking damages pursuant to § 2607(d)(2). It is therefore Plaintiffs' contention that § 2607(a) confers upon them the right to participate in a kickback-free settlement process, and any violation of that right by Defendants results in a concrete, particularized injury giving them standing to seek damages pursuant to § 2607(d)(2). According to Plaintiffs, this injury is redressable because § 2607(d)(2) allows them to obtain damages of three times the amount that they paid for primary mortgage insurance.[5] Thus, Plaintiffs contend that because primary mortgage insurance is the "settlement service involved in the violation," § 2607(d)(2), Plaintiffs are entitled to recover "three times the amount of any charge paid for such settlement service." *Id.*

Whether Plaintiffs have asserted an injury in fact that is redressable by this Court, therefore, is the core issue in this case and can only be answered by an interpretation of the statutory provisions of RESPA. In interpreting RESPA's language, particularly the language of § 2607(d)(2), the courts have read the lan-

---

**5.** The Court notes that it is undisputed that primary mortgage insurance is a settlement service covered by the provisions of RESPA. *See Patton v. Triad Guar. Ins. Corp.,* 277 F.3d 1294, 1298–99 (11th Cir.2002) (holding that RESPA specifically refers to primary mortgage insurance).

guage of § 2607(d)(2) more narrowly than Plaintiffs ask this Court to read it. The starting point of the Court's discussion of the case law interpreting § 2607(d)(2) is *Durr v. Intercounty Title Co. of Illinois.* In *Durr*, the defendant, Intercounty Title Company, charged the plaintiff $62 for recording a deed and its accompanying mortgage, $155 for closing fees, and $170 for title insurance. The plaintiff contended that he had been overcharged by $8 because the recorder of deeds had only charged Intercounty $54 for recording the deed and the mortgage. Thus, the plaintiff contended that Intercounty had violated RESPA by charging him $62, instead of $54, for recording the deed and mortgage. Based on this $8 overcharge, the plaintiff sued Intercounty for all of Intercounty's charges: $62 for recording fees, $155 for closing fees, and $170 for title insurance. In addition, the plaintiff sought to certify a class action against Intercounty based on these allegations. The district court issued two sua sponte orders criticizing the plaintiff's complaint for alleging excessive damages and for failing to allege any facts showing the existence of any other potential plaintiffs. With respect to the plaintiff's calculation of damages, the district court specifically held that "Durr's damages for the violation would appear to be three times the $8.00 overcharge or $24.00, rather than three times what Intercounty charged for all its settlement services . . . ." *Durr*, 14 F.3d at 1185 (internal quotations omitted). The plaintiff, however, failed to correct his pleading deficiencies, that is, plaintiff never stated the bases for his claims that a class should be certified or that he was entitled to more than $8 in damages. Based on the plaintiff's attorney's failure to address the district court's concerns, the district court dismissed the plaintiff's complaint and imposed Rule 11 sanctions against the plaintiff's attorney.

On appeal to the Seventh Circuit Court of Appeals, the court of appeals affirmed both the dismissal and the imposition of Rule 11 sanctions. The court affirmed the dismissal solely on the basis that the plaintiff's complaint contained no allegations whatsoever "that Intercounty's overcharge was in the nature of a 'portion, split, or percentage of any charge' given to a third party." *Id.* at 1187. The court found that without such allegations, the plaintiff's claims failed under RESPA because to state a RESPA claim, there must be allegations that at lease two parties shared fees. With respect to the district court's imposition of Rule 11 sanctions, the court of appeals ruled, in pertinent part, that the district court did not abuse its discretion in sanctioning the plaintiff's attorney because "even though [the attorney] identified only an $8.00 overcharge, he nevertheless sued to recover all the charges Intercounty made to Durr: $62.00 for recording fees, $155.00 for closing fees, and $170.00 for title insurance." *Id.* at 1188. The court thus held that "[t]o the extent the claim exceeded three times the $8.00, . . . there was no basis for it." *Id.* The Seventh Circuit therefore indicated that a plaintiff's recovery under RESPA is limited to the amount of the overcharge, not the entire amount of the settlement service provided. Notably, however, the court did not address whether the plaintiff had standing to bring his claim or whether RESPA entitled him to a kickback-free settlement process even in the absence of overcharges. The district courts in *Morales* and *Moore*, however, addressed these questions and concluded that, absent an overcharge that is contestable by the plaintiff, a plaintiff does not have standing to sue under RESPA.

In *Morales*, the district court, citing *Durr*, went further in narrowing the application of the provisions of § 2607. The plaintiffs in *Morales* sued the defendant title insurance companies for violating 12 U.S.C. § 2607(a), alleging that the defen-

dants gave illegal kickbacks to the title agents who had referred the plaintiffs to the defendants. The plaintiffs contended that these kickbacks caused them to be overcharged for title insurance and therefore they were entitled to damages under RESPA. The plaintiffs argued that, under 12 U.S.C. § 2607(d)(2), they were entitled to damages in the amount of three times the total amounts they paid for title insurance. The Court, however, disagreed and instead determined that the plaintiffs lacked standing to pursue their claims because, based on the filed rate doctrine,[6] they could not challenge the title insurance rates that had been filed with the Florida Department of Insurance. Therefore, the court held that "because [the plaintiffs] have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates. Absent a cognizable injury, the plaintiffs lack standing." *Morales*, 983 F.Supp. at 1429 (citation omitted).

The *Morales* court was not persuaded by the plaintiffs' arguments that, because RESPA provided for an award of three times the entire amount paid for the title insurance, "the filed rate doctrine, and its fountainhead, the doctrine of standing," *id.*, should not prevent the plaintiffs from obtaining relief under RESPA. The court based its decision on the court of appeals' holding in *Durr*, RESPA's original legislative history, and a comparison between the damages provisions of § 2607(d)(2) and those of § 2608. Based on these sources of authority, the court eschewed a "literal approach to [§ 2607(d)(2)'s] language," *id.*

at 1427, and instead reasoned that "a better reading of the statute is that the damage award consist[s] of three times the amount which violates RESPA." *Id.* Based on this reasoning, therefore, the district court dismissed the plaintiffs' RESPA claims pursuant to the filed rate doctrine (and, therefore, for lack of standing). *See id.* at 1430.

In *Moore*, the district court, citing *Durr* and *Morales*, held that the plaintiffs lacked standing to sue their primary mortgage insurers for engaging in illegal kickbacks under RESPA where the plaintiffs did not allege that the defendant insurers overcharged them or that the insurers actually kicked back any of the insurance-premium payments to the referring lender. The court based its decision on the holdings of *Durr* and *Morales*, RESPA's purpose as articulated in 12 U.S.C. § 2601(a) (reproduced above), and the legislative history behind RESPA. In construing *Durr* and *Morales*, the district court noted that in both of these decisions the courts had held that a plaintiff suing under RESPA was only entitled to three times the amount he was overcharged, not three times the entire amount of the settlement service. The *Moore* court also noted that in *Morales* the court had found "that the plaintiffs lacked standing to sue under RESPA ...." *Moore*, 233 F.Supp.2d at 824.

The *Moore* court found the holdings of *Durr* and *Morales* to be in accord with the articulated purpose of RESPA, that is, the protection of consumers "*from unnecessarily high settlement charges.*" *Id.* at 825 (quoting 12 U.S.C. § 2601(a) (emphasis

---

6. Because a discussion of the filed rate doctrine is not necessary to the Court's decision, the Court will not address the application of the filed rate doctrine to this case. *See Moore*, 233 F.Supp.2d at 823 n. 2 (declining to express an opinion on the issue of the filed rate doctrine). The Court does note, however, that, to the extent that Radian was re-

quired to file its insurance rates with the North Carolina Department of Insurance, based upon the filed rate doctrine, the filing of a rate by Radian would bar Plaintiffs from challenging the reasonableness of those rates. *See Morales*, 983 F.Supp. at 1426–29. *But see* N.C. Gen.Stat. §§ 58–40–15(7), –30.

added)). The court found that the *Durr* and *Morales* courts' interpretation of § 2607(d)(2) was also consistent with § 2607(c), "which expressly permits payments for goods actually furnished and services actually performed." *Id.* Furthermore, in addition to examining the purpose of RESPA as articulated in §§ 2601(a) and 2607(c), the court also looked at the legislative history behind RESPA in reaching its conclusion. Based on this legislative history, the court found that "the legislative history is consistent with the approach adopted by the court: The treble damages provision extends only to that portion of a settlement service charge that is involved in the RESPA violation," *id.* at 826, that is, the amount of the overcharge. Based on these findings, the court held that the plaintiffs' contention that RESPA "conferred upon [them] a statutory right to be free from any unlawful referral or kickback arrangement," *id.* at 823, was insufficient to establish Article III standing.

Plaintiffs contend, however, that this Court should not follow *Durr, Morales,* and *Moore* because they were incorrectly decided.[7] In support of this contention, Plaintiffs cite Paul Barron & Michael A. Berenson, *Federal Regulation of Real Estate and Mortgage Lending* § 2:56 (4th ed.2003).[8] The Court notes that Barron and Berenson contend that the court in *Durr* failed to "cite or focus on the statutory language," and that the courts in *Morales* and *Moore* incorrectly read the legislative history behind the statute. The Court further notes, however, that Barron

and Berenson fail to cite any case law supporting their position that § 2607(d)(2) should be read to allow a plaintiff to recover three times the entire amount of the cost of the settlement service, as opposed to three times the amount of the overcharge. Plaintiffs, however, direct this Court to *Pedraza v. United Guaranty Corp.,* 114 F.Supp.2d 1347 (S.D.Ga.2000). In *Pedraza,* the district court stated that "[s]ection 2607(d)(2) allows persons whose costs for settlement services were incurred in violation of the anti-kickback provision to recover treble the cost of such unlawful charge, regardless of whether such person actually paid an inflated cost for such services." *Id.* at 1351. While *Pedraza's* language does seem to conflict with the holdings of *Durr, Morales,* and *Moore,* this Court notes that the court in *Pedraza* did not have before it the question of standing or the magnitude of the damages RESPA plaintiffs can recover. Instead, the issue before the court in *Pedraza* was the same issue that was before this Court in its earlier Opinion in this case—whether the plaintiffs' claims were barred by the statute of limitations. The *Pedraza* court dismissed the plaintiffs' claims as time barred, and, therefore, engaged in no discussion of standing or of the proper measure of damages.

Plaintiffs further contend, however, that this Court has already held that the proper "measure of damages is three times the total settlement charge." (Pls.'2d Opp. Br. at 16 (citing *Mullinax,* 199 F.Supp.2d at 321).) The Court, however, made no such

---

**7.** The Court notes that in Plaintiffs' Second Opposition Brief, Plaintiffs technically only challenged the propriety of the holding of the Court in *Morales.* (Pls.' 2d Opp. Br. at 15–16.) However, because *Moore* was decided subsequent to Plaintiffs' Second Opposition Brief and because the treatise on which Plaintiffs rely criticizes *Durr, Morales,* and *Moore,* the Court assumes that Plaintiffs dispute the validity of each of these three decisions.

**8.** The Court notes that in their Second Opposition Brief, Plaintiffs cite § 2.04[1][f] of the 2000 edition of this treatise. The Court, however, to ensure the most up-to-date treatment of this issue, has cited the Westlaw version of this treatise, which is located at "FRREML s 2:56."

ruling. In considering Defendants' McCarran–Ferguson preemption argument, the Court merely assumed, "arguendo, ... that RESPA's remedy triples the price of the entire value of the settlement service itself ...." *See Mullinax,* 199 F.Supp.2d at 321. Furthermore, the Court specifically "note[d] that at least one appellate court would disagree with [this] characterization of RESPA's measurement of damages." *Id.* at 321 n. 4 (citing *Durr,* 14 F.3d at 1185). Thus, the Court did not decide this issue in its earlier Opinion.

■ In summary, therefore, the holdings of *Durr, Morales,* and *Moore* demonstrate that Plaintiffs in this case lack standing to pursue their RESPA claims. Plaintiffs' contentions that they have suffered an injury because they were subjected to kickback-tainted transactions flies directly in the face of the direct holding of *Moore* and the implicit holding of *Morales.* Further, while not specifically addressed by *Durr, Morales,* or *Moore,* based on those courts' interpretations of § 2607(d)(2), which are adopted by this Court, the Court finds that, in addition to Plaintiffs' failure to allege an injury in fact, Plaintiffs have also failed to show how this Court could redress an injury if one existed. In other words, damages are available under § 2607(d)(2) only if Plaintiffs were overcharged; Plaintiffs have not alleged they were overcharged; therefore, Plaintiffs are not entitled to damages under § 2607(d)(2). Furthermore, this Court held in its January 25, 2002, Opinion that Plaintiffs were also not entitled to injunctive relief. Thus, even if Plaintiffs were correct that RESPA confers upon them a statutory right to be free of kickback-tainted transactions and that this right meets the injury-in-fact element of standing, because Plaintiffs have not alleged that Radian overcharged them, the Court cannot redress Plaintiffs' alleged injury.

For the foregoing reasons, therefore, the Court finds that Plaintiffs have not alleged an injury in fact that is redressable by this Court. Accordingly, the Court finds that Plaintiffs lack standing to pursue their claims under RESPA and Plaintiffs' cause of action must therefore be dismissed for lack of subject matter jurisdiction.

## IV. MOTION TO DISMISS FOR FAILURE TO PLEAD FRAUDULENT CONCEALMENT WITH PARTICULARITY

Although the Court has dismissed Plaintiffs's cause of action for lack of standing, the primary issue before the Court after it issued its January 25, 2002, Opinion was the question of whether Mullinax and Pike had adequately pled the elements of the fraudulent concealment tolling doctrine so as to equitably toll RESPA's statute of limitations. For the sake of completeness, the Court therefore finds it appropriate to discuss whether the Amended Complaint satisfies the Court's instructions in its January 25, 2002, Order requiring Mullinax and Pike to plead fraudulent concealment with the particularity required by Federal Rule of Civil Procedure 9(b). Therefore, the Court will address Defendants' Second Motion to Dismiss with respect to Defendants' arguments that Mullinax and Pike failed even in their Amended Complaint to plead fraudulent concealment with the necessary particularity.

### A. Standard of Review

With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). Generally, "[a] court may dismiss a complaint only if it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 995, 152 L.Ed.2d 1 (2002) (internal quotations omitted); *accord Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989) (internal quotations omitted).

### B. Equitable Tolling

The statute of limitations for claims brought by private litigants for violations of 12 U.S.C. § 2607 is "1 year ... from the date of the occurrence of the violation." 12 U.S.C. § 2614. Thus, as this Court previously held in its January 25, 2002, Opinion, with respect to Plaintiffs Mullinax and Pike, the "date of the occurrence" of Radian's alleged RESPA violation was on or about June 2, 1999, the date that Mullinax and Pike contracted with Radian to purchase primary mortgage insurance. *Mullinax*, 199 F.Supp.2d at 324. Mullinax and Pike, however, did not file their lawsuit until December 15, 2000, well over one year after the accrual of their cause of action. Defendants in their First Motion to Dismiss therefore contended that Mullinax and Pike's claims were time barred. Mullinax and Pike contended, however, that RESPA's statute of limitations was equitably tolled by the doctrine of fraudulent concealment because Defendants

fraudulently concealed their RESPA violations and because Mullinax and Pike had exercised due diligence in attempting to discover Defendants' alleged RESPA violations. Defendants contended, however, that Mullinax and Pike had failed to allege fraudulent concealment with the particularity required by Federal Rule of Civil Procedure 9(b). The Court agreed with Defendants that Mullinax and Pike had failed to allege fraudulent concealment with the particularity required by Rule 9(b), but instead of dismissing their case outright, the Court allowed Mullinax and Pike thirty days to remedy this deficiency in their Complaint. Plaintiffs thereafter filed their Amended Complaint with this Court on February 25, 2002. The issue before the Court, therefore, is whether the allegations in Plaintiffs' Amended Complaint adequately allege that Defendants fraudulently concealed their RESPA violations from Mullinax and Pike.

#### a. Fraudulent Concealment Standard

As the Fourth Circuit Court of Appeals explained in *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119 (4th Cir.1995), "[t]he purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from 'concealing a fraud, or ... committing a fraud in a manner that it concealed itself until' the defendant 'could plead the statute of limitations to protect it.'" *Id.* at 122 (alteration in original) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874)). Under this doctrine " 'when the fraud has been concealed or is of such a character as to conceal itself,' and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud." *Id.* (quoting *Bailey*, 88 U.S. at 349, 88 U.S. 342). The court of appeals noted that "[a]lthough *Bailey* was a fraud action, the Supreme Court subsequently stated that

the fraudulent concealment tolling doctrine is to be 'read into every federal statute of limitation.'" *Id.* (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)). To invoke this doctrine and equitably toll the statute of limitations, the plaintiff must sufficiently allege that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* (citing *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 555 (4th Cir. 1974)); *accord Detrick v. Panalpina, Inc.,* 108 F.3d 529, 541 (4th Cir.1997).

### b. Mullinax and Pike's Allegations of Fraudulent Concealment

In the Court's January 25, 2002, Opinion, the Court held that the original Complaint satisfied the second and third elements of the fraudulent concealment tolling doctrine, that is, Mullinax and Pike sufficiently alleged that they failed to discover Radian's alleged wrongdoing during the limitations period and this lack of discovery occurred even though they exercised due diligence. In light of the additional allegations in the Amended Complaint, Defendants now ask the Court to revisit that holding and find that the Amended Complaint demonstrates that, as a matter of law, Mullinax and Pike failed to exercise due diligence in discovering Radian's alleged wrongdoing. The Court, however, has conducted a thorough review of Plaintiffs' Amended Complaint and finds that it still contains sufficient allegations that Mullinax and Pike exercised due diligence in attempting to discover Defendants' violations of RESPA.

The issue before the Court, therefore, is whether the Amended Complaint sufficiently alleges the first element of the fraudulent concealment tolling doctrine,

that is, whether Radian fraudulently concealed the alleged kickback scheme from Mullinax and Pike. As this Court held in its earlier Opinion, because Mullinax and Pike are alleging that Radian committed fraud in concealing its alleged RESPA violations from them, Mullinax and Pike must allege fraudulent concealment with the particularity required by Federal Rule of Civil Procedure 9(b). *See Mullinax,* 199 F.Supp.2d at 330; *accord Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783–84 (4th Cir.1999) (holding that fraud must be pled with particularity under Rule 9(b)). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." As this Court held in its January 25, 2002, Opinion, "Plaintiffs' Complaint must provide the details necessary to determine 'how, when, and in what manner' Radian and the lenders entered into any agreements to conceal their alleged kickback scheme." *Mullinax,* 199 F.Supp.2d at 330 (some internal quotation marks omitted) (quoting *Charlotte Telecasters, Inc. v. Jefferson–Pilot Corp.,* 546 F.2d 570, 574 (4th Cir.1976) (quoting *Stearns v. Page,* 48 U.S. (7 How.) 819, 829, 12 L.Ed. 928 (1849))); *accord Pedraza v. United Guar. Corp.,* 114 F.Supp.2d 1347, 1355–56 n. 16 (S.D.Ga.2000) (citing *Stearns* ) (holding that, to equitably toll RESPA's statute of limitations, the plaintiff must plead fraudulent concealment with the particularity required by Rule 9(b)). As the Fourth Circuit Court of Appeals held in *Charlotte Telecasters, Inc.,* "[a] complainant, [to avoid the statute of limitations,] must state in his bill distinctly the particular act of fraud, misrepresentation, or concealment .... The charges must be definite and reasonably certain, capable of proof, and clearly proved ...."

*Charlotte Telecasters, Inc.*, 546 F.2d at 574 (second alteration in original) (internal quotation marks omitted) (quoting *Stearns* ).

As the Fourth Circuit Court of Appeals explained in *Harrison,* Rule 9(b)'s enhanced pleading requirements have four purposes: (1) to "ensur[e] that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of"; (2) "to protect defendants from frivolous suits"; (3) "to eliminate fraud actions in which all the facts are learned after discovery"; and (4) to "protect[ ] defendants from harm to their goodwill and reputation." *Harrison,* 176 F.3d at 784 (internal quotations omitted). The court of appeals thus held that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Further, "[t]he most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." *Nat'l Mortgage Warehouse, LLC v. Trikeriotis,* 201 F.Supp.2d 499, 505 (D.Md.2002) (internal quotation marks omitted) (quoting *Kerby v. Mortgage Funding Corp.,* 992 F.Supp. 787, 800 (D.Md.1998) (quoting *Windsor Assocs. v. Greenfeld,* 564 F.Supp. 273, 280 (D.Md.1983))).

■ Based on its review of the Amended Complaint, the Court finds that the allegations of the Amended Complaint still fail to allege the circumstances of fraudulent concealment with the particularity required by Rule 9(b). The Amended Complaint still fails to allege "how, when, and in what manner" Radian fraudulently concealed its alleged wrongdoing from Plain-

tiffs Mullinax and Pike. In their Second Opposition Brief, Mullinax and Pike argue that because "[t]he amended complaint adequately puts defendants on notice" of the nature of Mullinax and Pike's fraudulent concealment claims, the Amended Complaint satisfies the requirements of Rule 9(b). (Pls.'2d Opp. Br. at 2.) In support of this argument, Mullinax and Pike first cite the case of *Gilbert v. Bagley,* 492 F.Supp. 714 (M.D.N.C.1980). In *Gilbert,* the district court held that "Rule 9(b) does not contradict the theory of notice pleading embraced by the Federal Rules in general, and Rule 8, in particular. . . . So long as the complaint affords defendant notice of the claims against him and evidences a reasonable belief on plaintiffs' part that his [sic] complaint has merit, Rule 9(b) is satisfied . . . ." *Id.* at 725–26. Plaintiffs further rely on the related case of *Fulk v. Bagley,* 88 F.R.D. 153, 164–65 (M.D.N.C. 1980), for the same proposition. Based on *Gilbert* and *Fulk,* therefore, Plaintiffs contend that because Defendants have "reasonable notice" of Plaintiffs' fraudulent-concealment claims, Plaintiffs have complied with rule 9(b).

Thus, to the extent that Plaintiffs Mullinax and Pike contend that under Rule 9 "[t]he most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading," *National Mortgage Warehouse,* 201 F.Supp.2d at 505, the Court accepts Mullinax and Pike's argument. However, the Court has previously held, and continues to so hold, that to give adequate notice under Rule 9(b) Plaintiffs must allege the circumstances of "how, when, and in what manner Radian fraudulently concealed its alleged wrongdoing from Plaintiffs." Plaintiffs' Amended Complaint is still devoid of allegations that state fraudulent concealment with the

requisite particularity. The allegations in Plaintiffs' Amended Complaint are basically the same allegations that the Court rejected as insufficient in Mullinax and Pike's original Complaint. As this Court discussed in its January 25, 2002, Opinion, with respect to the original Complaint, Mullinax and Pike presented three arguments that the statute of limitations should be equitably tolled. First, Mullinax and Pike maintained that a violation of RESPA's anti-kickback provision is a self-concealing wrong and, as a result, the mere act of violating the anti-kickback provision demonstrates Radian's fraudulent concealment of its alleged wrongdoing. *See Mullinax*, 199 F.Supp.2d at 329. Second, Mullinax and Pike argued that Radian's use of sophisticated business transactions to distribute the kickbacks to the lenders demonstrates that Radian fraudulently concealed the alleged kickbacks. *See id.* Third, Mullinax and Pike alleged that Radian fraudulently concealed the kickbacks by entering into an agreement with Crestar to not disclose information about the alleged kickbacks or that Crestar would provide misleading information to Plaintiffs. *See id.* at 329–30. The Court, consistent with the rulings of other courts that had considered such arguments, rejected Mullinax and Pike's first two arguments as a matter of law. *See id.* at 329.

The Court, however, found that there might be some merit in Mullinax and Pike's third argument. The Court held, however, that "[t]he mere act of disclosure violations by another party, in this instance the lenders, cannot be used to infer fraudulent conduct on behalf of Radian unless Plaintiffs [Mullinax and Pike] allege 'some link between the fraudulent conduct of [their] lender and Defendant.'" *Mullinax*, 199 F.Supp.2d at 330 (second alteration in original) (quoting *Pedraza v. United Guar. Corp.*, 114 F.Supp.2d at 1358). Based upon this determination, the Court found that Mullinax and Pike had failed to

"provide the details necessary to determine how, when, and in what manner Radian and the lenders entered into any agreements to conceal their alleged kickback scheme." *Id.* (internal quotations omitted). After reviewing the Amended Complaint, the Court now finds that Mullinax and Pike have again failed to allege with particularity the circumstances surrounding the purported agreements between Radian and its lenders whereby Radian caused the lenders to violate their disclosure obligations under RESPA. Mullinax and Pike's allegations that there is a "link" between Radian and the lenders can be grouped into the following three general categories. First, Mullinax and Pike allege that Defendants and their lenders entered into confidential agreements whereby Radian would provide kickbacks to the lenders for the referral of mortgage-insurance business and the lenders agreed to violate RESPA's disclosure obligations to Mullinax and Pike. Second, Mullinax and Pike allege that the lenders failed to disclose to Mullinax and Pike the nature of the kickback agreements between Defendants and the lenders. Third, Mullinax and Pike allege that Defendants made fraudulent statements both to the industry press and numerous state insurance regulators that the alleged kickbacks were legitimate business arrangements and no compensation was being provided for referral of business.

The allegations in the Amended Complaint, therefore, are not significantly different from the allegations in the original Complaint that the Court found to be insufficient. As the Court noted in its earlier Opinion, "Plaintiffs' primary allegation in support of this theory is a vague statement that an 'implicit or explicit agreement' existed between Radian and the lenders." *Mullinax*, 199 F.Supp.2d at 330. The allegations in the Amended Complaint are not significantly more particular.

Paragraph 34(c) of the Amended Complaint provides Mullinax and Pike's best attempt at alleging the "how, when, and in what manner" Defendants used an illegal agreement with the lenders to fraudulently conceal Defendants' alleged violations of RESPA. Paragraph 34(c) states:

Defendants entered into agreements with lenders, including 'plaintiffs' lenders, that the nature of the relationship between defendants and the lenders, and in particular, the lenders' agreement to require borrowers to pay for mortgage insurance provided by defendants in return for financially advantageous business arrangements, would be kept secret. They further agreed that the lender [sic] would violate their duty under RESPA to disclose this relationship to plaintiffs and class members on their Good Faith Estimate and other loan forms.

Paragraph 34(c), and Mullinax and Pike's further allegations that attempt to bolster Paragraph 34(c), are still insufficient under Rule 9(b). Such allegations offer little more particularity than Mullinax and Pike's earlier vague statement that an "explicit or implicit agreement" existed between Defendants and the lenders. As discussed above, the Fourth Circuit Court of Appeals has cautioned that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. In the present case, however, the Court is not satisfied that Mullinax and Pike's allegations meet these requirements. While Mullinax and Pike's allegations might put Defendants on notice of the particular circumstances of fraudulent concealment that Defendants would have to defend against at trial, these allegations fail to satisfy this Court

that Mullinax and Pike have substantial prediscovery evidence of Defendants' alleged agreement with Crestar (or any of its lenders) to fraudulently conceal information from Mullinax and Pike.

Mullinax and Pike's further allegations that Defendants' failure to disclose the alleged illegal kickback scheme to investigatory agencies constitutes fraudulent concealment are also without merit. As this Court held in its previous Opinion, such allegations "provide very little information about 'how, when, and in what manner' Radian entered into any agreements that would constitute fraudulent concealment and therefore the allegations in Plaintiffs' Complaint do not satisfy Rule 9's requirements." *Mullinax*, 199 F.Supp.2d at 330–31. Mullinax and Pike now seem to contend that these allegations, while not relevant to showing agreements between Radian and the lenders, are relevant to show additional affirmative conduct by Radian to fraudulently conceal its wrongful activities. The Court finds, however, that such statements amount to little more than denials of wrongdoing by Defendants that fail to show that Defendants fraudulently concealed their alleged misconduct. As the Fifth Circuit Court of Appeals held in *Texas v. Allan Construction Co.*, 851 F.2d 1526 (5th Cir.1988), "generally speaking, denial of wrongdoing is no more an act of concealment than is silence. Nevertheless, many courts have recognized, and so now do we, that a denial may constitute concealment where the parties are in a fiduciary relationship, or where the circumstances indicate that it was reasonable for the plaintiff to rely on defendant's denial." *Id.* at 1532–33. In the present case, it is clear that Radian was not in a fiduciary relationship with the investigatory agencies, nor was Radian in a fiduciary relationship with Mullinax and Pike. Further, there are no allegations that Mullinax and Pike relied on Defendants' denials of

wrongdoing or that such reliance would be reasonable.

For the foregoing reasons, the Court's review of the Amended Complaint leads it to the same conclusion that it reached in its earlier Opinion—that Mullinax and Pike have failed to plead with particularity the circumstances of "how, when, and in what manner" Radian and Crestar entered into any agreement to conceal their alleged kickback scheme. Therefore, RESPA's one-year statute of limitations is not equitably tolled and, even if Mullinax and Pike had standing to bring their RESPA claims, their claims would be dismissed with prejudice as barred by RESPA's statute of limitations.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint with respect to Plaintiffs' attempt to add Joseph and Verda Adams to this cause of action is DENIED. Defendants' Motion to Dismiss against all Plaintiffs based upon this Court's lack of subject matter jurisdiction over Plaintiffs' RESPA claims because Plaintiffs do not have standing to bring these claims, however, is GRANTED, and Plaintiffs' RESPA claims are therefore dismissed. An Order and Judgment consistent with this Memorandum Opinion shall be filed forthwith.

### ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Document # 27] Plaintiffs' Amended Complaint with respect to Plaintiffs' attempt to add Joseph and Verda Adams to this cause of action is DENIED and that Plaintiffs Verda and Joseph Adams were properly added as Plaintiffs to this action.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [Document # 27] is GRANTED with respect to all Plaintiffs for lack of standing and that Plaintiffs Mullinax, Pike, and Joseph and Verda Adams' claims are hereby DISMISSED.